N. W. BROWN v. SOUTHERN RAILWAY COMPANY.

(Filed 22 April, 1914.)

1. Surface Water—Diversion of Flow—Negligence—Cause of Damages—Duty of Lower Proprietor.

Where damages are sought against a railroad for diverting the surface flow of water onto the plaintiff's land in the construction of a spur track, testimony is competent to show that the plaintiff did not keep the ditches on his own land open, when there is evidence that this neglect on the plaintiff's part was the sole cause of the injury alleged.

2. Surface Water — Diversion of Flow — Drain Pipes—Request of Lower Proprietor—Trials—Evidence.

In an action against an upper owner of lands to recover damages for diverting the surface flow of water onto the plaintiff's land under allegation that certain drain pipes were improperly provided for the purpose by the defendant on its own land, it is competent to show that the drains were put in in compliance with the plaintiff's request, and that he could not therefore complain.

3. Appeal and Error — Assignments of Error — Exceptions Abandoned.

Exceptions not brought forward in the assignments of error are deemed abandoned on appeal.

4. Surface Waters—Diversion of Flow—Artificial Increase—Trials— Instructions—Special Request.

It is only for damages for a diversion of the surface flow of water for which the upper proprietor may be held liable to the lower proprietor, and when the court has thus correctly charged the law, it will not be held for error that he failed further to charge that the upper proprietor cannot increase the discharge of the water, at any given point, in the absence of appellant's special request so to charge, for exceptions of this character must be to the refusal of the court to give such special requests.

APPEAL by plaintiff from *Devin, J.,* at December Term, 1914, of ORANGE.

*C. D. Turner and S. M. Gattis for plaintiff.*
*J. Dolph Long and Parker & Parker for defendant.*

CLARK, C. J. This is an action for damages in overflowing the plaintiff's property by diverting the flow of surface water by building a spur track. The answer denied the allegations of the complaint and alleged that the damage was not caused by defendant diverting the flow of water, but because the plaintiff had permitted drains and ditches about his property to become filled up.

The plaintiff's property lies just outside the west limit of Hillsboro on the west side of the roadway whose continuation into the town is known as Nash Street. It is not controverted that the plaintiff's lot is flooded in times of heavy rain, and it

seems that the roadway in front of his property is higher than
the floor of his buildings which are flooded, and that the floor
of said buildings is about on a level with the sidewalk in front
of them.  It also seems that there is no dispute that the drains
or ditches in front of the plaintiff's property are filled up.  His
property is down hill from the place where the defendant's spur
track crosses Nash Street.

The plaintiff introduced evidence tending to show that the
defendant by building said spur track had diverted the natural
flow of the water so that more water flowed down Nash Street
upon his land than formerly.  There was evidence introduced
by the defendant tending to show that the spur track had not
diverted the flow of the surface water at all and had not caused
any more water to flow down Nash Street, and that the property
of plaintiff had been flooded in times of heavy rains before said
spur track was put in.  It was also in evidence that where the
spur track crossed Nash Street terra-cotta pipes had been put in
large enough to carry off the water that flowed down Nash
Street, so that it was not in any way retarded or diverted.

The first ten exceptions of the plaintiff are to the judge per-
mitting witnesses to testify what would be the effect if the
ditches in front of Brown's property were kept open.  These
ditches were not on railroad property.  It was in evidence that
they were filled up and that there was a considerable amount of
water that would naturally flow down Nash Street regardless
of any water diverted.  These questions were pertinent as tend-
ing to show that the property would be as much overflowed any-
way and tending to prove that the plaintiff's negligence to keep
the drains and ditches open caused the damage which he sus-
tained, and not the spur track.

The next three exceptions are to the judge permitting evidence
to show that certain pipes were put in and certain drains were
opened by the defendant on its own property at the request of
the plaintiff, before the spur track was put in.  This was com-
petent to substantiate the defendant's claim that if this caused
a diversion of water the defendant could not complain.

Exception 20 is because the court charged the jury that if they should find that the defendant in the construction of its tracks and embankment provided certain pipes and culverts at its intersection with Nash Street to carry off through its right of way the waters coming down in the ditches or gutters of said street, and they were sufficient for that purpose, the defendant would not be liable for any damage arising from the filling up of the town or street ditches below the said right of way or the ponding of water caused by the said ditches being filled up, unless the water was diverted. In this there was no error.

The other exceptions to the charge cannot be sustained, for they are to instructions which are all based upon the principle that the defendant was liable if it diverted the water and thereby caused the injury, but if it did not do this, it would not be liable. Exceptions 15 to 18, for "failure to charge as requested," are abandoned, for they are not brought forward among the "assignments of error." Rule 21, 164 N. C., 546.

This case seems to have depended almost entirely upon issues of fact, and the jury have responded in accordance with the views advanced by the defendant as to the cause of the injury. The facts are somewhat similar to those in *Greenwood v. R. R.,* 144 N. C., 446, and the court seems to have conformed in its charge to the law set out in the headnote of that case, which reads as follows: "The lower proprietor must receive the surface water which falls on adjoining higher lands and naturally flows therefrom. In an action for damages to bottom-lands of plaintiff by water flowing down and across defendant's track and ponding plaintiff's land, it is error for the court below to charge the jury that the defendant owed to the plaintiff the duty to provide side ditches sufficient to collect and carry off all surface water that came down from the land above in its natural flow." In that case the Court said: "The owner of the upper land may accelerate the flow of the water, but cannot divert it. *Porter v. Durham,* 74 N. C., 767. This is true as between the defendant and the plaintiff as owner of the land above the railroad track. And it is equally true as between the defendant and the plaintiff as the owner of the land below the railroad. . . . The

plaintiff has no legal ground for his complaint, which is that the defendant has not kept open side ditches to divert and carry off the water coming down from above, but, permitting the ditches to fill up, has let the water from the plaintiff's land from above sweep across its track unimpeded and flow in its natural course upon the plaintiff's land below."

By putting in a spur-track the defendant did not assume the duty of opening drains to keep off the water which came down Nash Street and would have flowed upon the plaintiff's land if the spur track had not been put in. The defendant would only be liable if it diverted the water by reason of its spur track, or otherwise, and threw upon the plaintiff's land water which otherwise would not have flowed over it. This was controverted by conflicting evidence. The law was clearly presented to the jury and the facts were found against the plaintiff.

The plaintiff in his brief makes the following citation from *Porter v. Durham,* 74 N. C., at p. 779: "An owner of lower land is obliged to receive upon it the surface water which falls on adjoining highland which naturally flows on the lower land. Of course, when water reaches his land, the lower owner can collect it in a ditch and carry it off to a proper outlet, so that it will not damage him. He cannot, however, raise any dyke or barrier by which it will be intercepted and thrown back on the land of the higher owner. While the higher owner is entitled to the service, he cannot artificially increase the natural quantity of water, *or change its natural manner of flow by collecting it in a ditch and discharging it upon the servient land at a different place or in a different manner from its natural discharge."* This is a sound proposition of law (*Briscoe v. Parker,* 145 N. C., 17), but to collect the water and discharge it at a different place than it would naturally go would be a diversion, and is covered by the charge. If the plaintiff had wished this particular manner of diversion more clearly submitted to the jury, he should have asked for fuller instructions. The jury were granted the privilege of viewing the premises, in the discretion of the judge (*Jenkins v. R. R.,* 110 N. C., 438; *S. v. Perry,* 121 N. C., 535), and doubtless understood the case fully, under the charge.

No error.